IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AIRWATCH LLC,<br><br>    Plaintiff,<br><br>v.<br><br>GOOD TECHNOLOGY CORPORATION, and GOOD TECHNOLOGY SOFTWARE, INC.,<br><br>    Defendants. | Civil Action File No. 1:13-CV-2870-WSD |

**REPLY IN SUPPORT OF**
**<u>AIRWATCH LLC'S MOTION TO REMAND</u>**

**I.    INTRODUCTION**

Under 28 U.S.C. § 1441(a), exclusive federal jurisdiction over state law claims arises only where an essential element of each claim "necessarily depends" on a "substantial question" of federal patent law. This Court only has "arising under" jurisdiction over AirWatch's claims if AirWatch must rely on federal patent law to prove the falsity of each of Good's statements. Because AirWatch's defamation claims do not concern statements accusing AirWatch of "infringing"

Good's patents, AirWatch can prove the falsity of each statement without reference to federal patent law.

Recent Supreme Court and Eleventh Circuit precedent also establishes that state law claims that depend on the resolution of a patent dispute only present a "substantial question" where resolution of the federal question is important to the federal system as a whole. Any patent issue arguably implicated in establishing the falsity of Good's statements would only relate to one means of determining whether AirWatch willfully infringed Good's patents and would have no impact on the federal system as a whole. Thus, even if AirWatch's state law claims did "necessarily depend" on issues of federal patent law, the claims fail to raise a "substantial question" of federal patent law.

Because there is no "arising under" jurisdiction,[1] the Court should grant AirWatch's motion to remand this case to the Superior Court of Fulton County, Georgia.

---

[1] Good's response does not contest that there is no diversity jurisdiction. Any jurisdictional claim based on diversity is therefore abandoned. *See Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.") (citing *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995)).

## II. ARGUMENT AND CITATION OF AUTHORITY

"Courts construe removal jurisdiction narrowly and resolve any doubts regarding the existence of federal jurisdiction in favor of the non-removing party." *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). Here, Good has failed to meet its burden to establish "arising under" jurisdiction. *Id.*

### A. State Law Defamation Claims Only "Arise Under" Federal Law If Proving the Falsity of Each Statement "Necessarily Depends" on Federal Patent Law.

If AirWatch can prove the falsity of any of Good's statements without reference to federal patent law, AirWatch's defamation claims do not "arise under" federal law. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988).[2] The existence of possible defenses based on patent law does not confer "arising under" jurisdiction where patent law is not a "necessary element" of each state law claim. *Id.* at 808. To establish exclusive federal jurisdiction here, Good must demonstrate that AirWatch ***cannot prevail*** on its defamation claims without determining whether AirWatch infringed Good's patents. *ClearPlay, Inc. v. Abecassis*, 602 F.3d 1364, 1367 (Fed. Cir. 2010).

---

[2] "If on the face of a well-pleaded complaint there are reasons completely unrelated to the provisions and purposes of the patent laws why the plaintiff may or may not be entitled to the relief it seeks then the claim does not 'arise under' those laws." *Christianson*, 486 U.S. at 810.

-3-

### 1. AirWatch can prove the falsity of Good's statements without reference to federal patent law.

Good asserts that AirWatch "jumps through semantic hoops" and ignores the "glaring reality" that its defamation claims depend on the outcome of Good's patent suit. Good's Resp. at 2. In reality, AirWatch's defamation claims are not based on Good's statements that AirWatch infringed Good's patents, and AirWatch does not allege that Good's statements are false because AirWatch did not infringe Good's patents – intentionally or otherwise. *Id.* ¶¶ 10-12, 14-16.[3] Instead of publically stating only that AirWatch willfully infringed Good's patents, Good publically accused AirWatch of "copying" Good's products, "cheating" to remain competitive, and not pursuing independent product development – these statements are the bases of AirWatch's claims. The relevant question is whether issues of federal patent law are essential to proving the falsity of each of these public statements.

AirWatch can disprove each of Good's statements without reference to any issue of federal patent law. First, Good's statement that AirWatch used Good's technology "instead of pursuing independent product development" can be proven

---

[3] AirWatch does not concede that it has infringed Good's patents. To the contrary, AirWatch denies that it has infringed Good's patents, and AirWatch is vigorously opposing Good's patent infringement claims in the Northern District of California. *See Good Technology Corporation and Good Technology Software, Inc. v. AirWatch LLC*, No. 5:12-cv-05827 (N.D. Cal.). This suit, however, does not concern any false statement related to patent infringement.

false pursuant to AirWatch's allegation that it has "engaged and continues to engage in independent and innovative product development." Compl. ¶¶ 10, 14. Second, Good's statement that AirWatch must use Good's intellectual property and "cheat" to remain competitive can be proven false pursuant to AirWatch's allegations that AirWatch developed sophisticated software for the iPhone 4 before Good even had access to the iPhone 4 API for Good's products. Compl. ¶¶ 11, 16. Third, although "copying" of a specific commercial product is one means to establish willful patent infringement, AirWatch does not need to rely on federal patent law to prove it did not "copy" a specific Good product. *Id.* ¶¶ 12, 15. Consequently, even if Good proves that AirWatch willfully infringed Good's patents, AirWatch can still prove the falsity of each of Good's public statements based solely on non-patent related allegations.

Nevertheless, Good continues to argue that patent issues play a "central role" in this case, based on a chart comparing AirWatch's defamation allegations to scattered allegations in Good's patent infringement complaint. Good's Resp. at 8.[4] Any similarity between the allegations in the patent complaint and Good's

---

[4] Good also argues – without citing any cases or providing any explanation – that its statements are protected under the California and Georgia litigation privilege. The litigation privilege, however, only covers communications "in furtherance of the objects of the litigation." *Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1141, 57 Cal. Rptr. 2d 284 (1996) (quoting *Silberg v. Anderson*, 50 Cal. 3d 205, 212, 786 P.2d 365 (1990)); *see also* O.C.G.A. § 51-5-8 (privilege only

-5-

public statements is irrelevant to whether application of federal patent law is necessary for AirWatch to prevail on its state law claims. For example, although the patent complaint includes allegations that AirWatch used Good's products "instead of pursuing independent product development," "independent product development" is not a term defined by federal patent law, and determining whether AirWatch "pursued independent product development" does not require any consideration of federal patent law.[5] In addition, Good's chart demonstrates that the patent complaint does not actually allege that AirWatch "cheated" to remain competitive or "copied" Good's products.[6] And, regardless of the contents of the patent complaint, determining whether AirWatch "cheated" to remain competitive

---

applies to communications "which are pertinent and material to the relief sought"). Good can provide no reason why publication of the false statements on its website and to the public assisted Good in achieving the relief it sought through litigation. *See Rothman*, 49 Cal. App. 4th at 1141 (holding litigation privilege only applied to "communications which function intrinsically, and apart from any consideration of the speaker's intent, to advance a litigant's case."). And, because the statements "could be construed as expressing malice," the statements are not covered by the qualified privilege in O.C.G.A. § 51-5-7. *See Executive Excellence, LLC v. Martin Bros. Investments, LLC*, 309 Ga. App. 279, 292, 710 S.E.2d 169, 180 (2011) (finding qualified litigation privilege does not apply to statements made with malice); Compl. ¶ 20 (alleging statements "were made with knowledge that they were false, and with spite, hatred, and ill-will towards AirWatch").

[5] Presumably, Good only included these allegations in the preamble because proving that AirWatch "did not pursue independent development" is irrelevant to its patent claims. Although Good points out that the patent complaint "incorporates by reference" the allegations in the preamble, no incorporation could make whether AirWatch did or did not pursue independent product development relevant to whether AirWatch infringed Good's patents.

[6] The patent complaint does not include the word "cheat." The only use of the word "copy" is with reference to the "widespread copying by other competitors" of Good's "innovations." Good's Resp. at 8-9.

-6-

or "copied" Good's products does not depend on determination of any federal patent law issue.

Good accuses AirWatch of intentionally "craft[ing]" the Complaint to avoid reference to patents or patent "infringement." Good's Resp. at 6. Yet, AirWatch is the "master of the complaint" and has the right to have its case heard in state court "so long as it eschews claims based on federal law." *Flanders Diamond USA, Inc. v. Nat'l Diamond Syndicate, Inc.*, 02 C 4605, 2002 WL 31681474, at *4 (N.D. Ill. Nov. 27, 2002). Because Good made statements that went beyond accusations of patent infringement and AirWatch chose only to allege claims based on statements that did not accuse AirWatch of patent infringement and that can be proven false without reference to federal patent law, AirWatch's state law tort claims must be heard in state court.

> **2. In the cases cited by Good, federal patent law was "necessary" to prove the defendant's statements were false because the statements directly accused the plaintiff of patent infringement.**

In both of the cases cited by Good, the defendant published an allegedly false statement explicitly accusing the defamation plaintiff of infringing a patent, and the defamation plaintiff alleged that the statements were false based exclusively on federal patent law. In contrast, AirWatch's defamation claims are not based on any statement accusing AirWatch of patent infringement, and

-7-

AirWatch's Complaint includes non-patent law reasons why each statement is false.

In *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 986 F.2d 476, 478 (Fed. Cir. 1993), Adcon asserted a business disparagement claim against Flowdata based on Flowdata's letters to customers warning that Adcon had "infringed Flowdata's patent." *Additive*, 986 at 478 (emphasis added). The Court found that Adcon's state law claims "necessarily depend[ed]" on resolution of a patent law issue because to prove the falsity of Flowdata's statement Adcon necessarily "must show that its product does not infringe the '318 patent." *Id.*

Similarly, in *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1329 (Fed. Cir. 1998) *overruled by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999), Hunter Douglas alleged that Harmonic's statement that Harmonic held "exclusive rights to make or sell window shades covered by [Harmonic patents]" was false only because Harmonic's "patents are invalid." The court found that Hunter Douglas' claims relied on federal patent law because determining whether Harmon's patents are "invalid" requires application of federal patent law. *Id.* The court, however, noted that had Hunter Douglas alleged "any other basis" for the falsity of Harmonic's statements, Hunter Douglas' state claims

US2008 5010929 1

would not "arise under" federal patent law. *Id.* [7] Unlike in *Hunter Douglas* and *Additive*, Good's statements do not directly accuse AirWatch of infringing any patent, and AirWatch's Complaint includes reasons why the statements are false that do not rely on federal patent law.

This case is most similar to *Flanders*. 2002 WL 31681474; *see also* Good's Resp. at 19 (detailing non-patent related statements at issue in *Flanders*). As in *Flanders*, Good's statements "stop short" of directly alleging that AirWatch infringed Good's patents. 2002 WL 31681474, at *3. Even if Good could assert patent-based defenses to AirWatch's claims, the *Flanders* court explained that "[i]t makes no difference" whether a patent claim could be raised "as part of [the] defense." *Id.* at *4. The relevant question is only whether AirWatch can "establish the falsity of each of the statements . . . without reference to any issue involving federal patent law." *Id.* The court in *Flanders* specifically distinguished *Hunter Douglas* and *Additive*, explaining that the false statements in those cases directly related to the validity of a patent and therefore required the plaintiff to prove issues

---

[7] The Federal Circuit cited three cases where "arising under" jurisdiction did not exist because the plaintiff had alternate, non-patent based theories. *See Christianson*, 486 U.S. at 813 ("[A] claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories."); *AT&T v. Integrated Network Corp.*, 972 F.2d 1321, 1324 (Fed. Cir. 1992) (finding no "arising under" jurisdiction because plaintiff could "rely on one theory with patent connotations, and on another theory involving no patent question."); *McArdle v. Bornhofft*, 980 F. Supp. 68, 72 (D. Me. 1997) ("The fact that the allegedly tortious conduct of Defendant may also constitute patent infringement is irrelevant . . . .").

-9-

of federal patent law to prevail. *Id.* at *3  Here, as in *Flanders*, because Good's false statements do not directly allege patent infringement, proving the statements false does not require determining whether AirWatch infringed Good's patents.

Good brushes off the fact that none of the statements at issue mentions the word "patent" or "infringement" as "semantics" and repeatedly asserts that AirWatch's claims "depend" on whether AirWatch infringed Good's patents. Good, however, fails to explain why Paragraphs 14-16 of the Complaint would not prove each of Good's statements false without reference to any issue of federal patent law.  *See* Compl. ¶¶ 14-16 (alleging that statements in ¶¶ 10-12 are "false and misleading").  As AirWatch can establish each of its defamation claims regardless of whether AirWatch willfully infringed Good's patents, federal patent law is not an "essential element" to AirWatch's state law claims, and this case does not "arise under" federal law.

### B. Any Federal Patent Issue in AirWatch's State Law Claims Does Not Raise a "Substantial Question" of Federal Law.

In *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013), the Supreme Court held that a state law claim that "necessarily depends" on an issue of federal patent law only raises a "substantial question" where the issue has significance "to the federal system as a whole."  The significance of the issue to the "particular parties in the immediate suit" is irrelevant. *Id.* Because the federal government has a "weak

-10-

interest" in adjudicating fact-bound patent disputes between two parties in a particular suit, "[s]tate law claims 'based on underlying patent matters will rarely, if ever, arise under federal patent law for purposes of § 1338(a).'" *MDS (Canada) Inc. v. Rad Source Technologies, Inc.*, 720 F.3d 833, 843 (11th Cir. 2013) (quoting *Gunn*, 133 S.Ct. at 1065). Good argues that the patent issues allegedly necessary to resolve AirWatch's state law claims constitute "substantial questions" of federal law, but cannot articulate any reason why resolution of AirWatch and Good's patent dispute would have importance to the federal system beyond this case.

Instead, Good argues that the rule announced in *Gunn* is limited only to cases where the patent issue is "purely backward looking," or where the patent suit has already been resolved. In *MDS (Canada) Inc. v. Rad Source Technologies, Inc.*, 720 F.3d 833, 843 (11th Cir. 2013), however, the Eleventh Circuit applied the *Gunn* "substantial question" test to a state law breach of contract claim that turned on issues of federal patent law, even though the patent suit had not been previously resolved. Good does not factually distinguish AirWatch's claims from the claims in *MDS* or dispute that *MDS* applies *Gunn* to a case that was not "purely backwards looking." Instead, Good asserts that the Eleventh Circuit improperly applied *Gunn*, and that this Court should ignore *MDS* and adopt Good's more narrow reading of *Gunn*. Good's Resp. at 17-18.

-11-

Good argues that in *Forrester Envtl. Servs., Inc. v. Wheelabrator Technologies, Inc.*, 715 F.3d 1329, 1335 (Fed. Cir. 2013), which Good describes as "a post-*MDS* Federal Circuit decision," the Federal Circuit limited *Gunn* only to backward-looking "case within a case" determinations. Good's Resp. at 16. Based on *Forrester's* allegedly narrow reading of *Gunn*, Good argues that *MDS* "goes well-beyond the rationale and holding in *Gunn*." Good's Resp. at 18. Contrary to Good's representations to this Court, however, *Forrester* was decided **two months before *MDS***, and the Eleventh Circuit could have, but chose not to adopt Good's limited reading of *Gunn* supposedly endorsed in *Forrester*.[8]

Further, the court in *Forrester* did not actually **hold** that *Gunn* was limited to "backward-looking claims." *Forrester*, 715 F.3d at 1334. Although the Federal Circuit speculated in ***dicta*** that cases such as *Hunter Douglas* and *Additive* "may well have" survived *Gunn*, the court did not decide whether *Gunn* is limited only to backward-looking claims because *Forrester* involved a foreign patent and was functionally equivalent to a "backward-looking claim." *Id.*[9] Other courts to address the issue have adopted the Eleventh Circuit's reading of *Gunn* and have

---

[8] *Forrester* was decided on May 16, 2013. *Forrester*, 715 F.3d 1329. *MDS* was decided on July 1, 2013. *MDS*, 720 F.3d 833.

[9] The Court ultimately found that the patent dispute did *not* raise a "substantial question" of federal law. *Forrester*, 715 F.3d at 1336 ("In sum, we conclude that even if the allegations contained in Forrester's complaint necessarily raise a question of patent law, the patent law issues are not 'substantial in the relevant sense' under *Gunn*.").

applied *Gunn* even where the patent claims were not "backwards-looking." *See e.g., USPPS, Ltd. v. Avery Dennison Corp.*, 10-50612, 2013 WL 5314716, at *4 (5th Cir. Sept. 24, 2013) (applying *Gunn* to tort claims where patent issues had not been adjudicated); *Haith ex rel. Accretive Health, Inc. v. Bronfman*, 928 F. Supp. 2d 964, 971 (N.D. Ill. 2013) ("*Gunn* cannot plausibly be read to apply only to the "case-within-a-case" scenario").[10]  Although *Gunn* happened to involve a hypothetical, backwards-looking patent claim, the Supreme Court suggested that state courts may also resolve "nonhypothetical patent questions" because state courts "hew closely to federal precedents" and "federal courts are of course not bound by state court . . . patent rulings." *Gunn*, 133 S. Ct. at 1067. Thus, there is no "split" between the Eleventh Circuit and the Federal Circuit. Unless this Court independently determines that the Eleventh Circuit incorrectly applied *Gunn*, the Court should apply the "substantial question" test articulated in *MDS* and *Gunn*.

To determine whether a federal issue constitutes a "substantial question" under *Gunn*, courts evaluate three factors intended to assess the importance of the

---

[10] *See also W. Virginia ex rel. Morrisey v. Pfizer, Inc.*, CIV.A. 3:13-2546, 2013 WL 3927833, at *7 (S.D.W. Va. May 13, 2013) (applying *Gunn* and finding no substantial question even where patent issues had not been adjudicated). Good cites no cases actually holding that *Gunn* is limited to "backward-looking" claims.

federal question to the federal system as a whole.[11]  As in *MDS*, all three factors weigh in favor of remand.  First, any federal patent issue in this case would only involve specific questions of fact – whether AirWatch infringed Good's patents.  Second, there is no reason why the outcome of Good and AirWatch's patent dispute would control the outcome of other cases.  Third, state courts have a strong interest in adjudicating state law tort claims, and the "government interest in having any single case of patent infringement heard in a federal forum is limited." *MDS*, 720 F.3d at 842.  Treating patent infringement suits between two parties as a "substantial question" "would sweep a number of state-law claims into federal court" and "alter the 'federal-state division of labor.'"  *Id.*  Because this case as it relates to patent issues merely presents a fact-bound patent dispute between two parties, it does not present a "substantial question" of federal law sufficient to confer exclusive federal jurisdiction under § 1441(a).

### C. AirWatch's State Law Claims Are Not Compulsory Counterclaims to the Patent Infringement Action.

As explained in AirWatch's Response to the Motion to Dismiss, AirWatch was not required to assert its state law claims as compulsory counterclaims to

---

[11] "First, a pure question of law is more likely to be a substantial federal question.  Second, a question that will control many other cases is more likely to be a substantial federal question.  Third, a question that the government has a strong interest in litigating in a federal forum is more likely to be a substantial federal question." *MDS*, 720 F.3d at 842 (internal citations and quotations omitted).

Good's patent infringement action because those claims (1) were published or republished after Good filed the patent complaint and (2) do not concern the same operative facts as Good's patent claims. AirWatch Mot. to Dismiss (Dkt. 8) at 9-17. Good argues AirWatch "had the opportunity" to assert these claims in the patent action, but whether AirWatch *could* have raised the claims in the patent action is irrelevant to whether AirWatch was *required* to raise the claims. In any case, because this Court lacks jurisdiction over this action, it should decline to consider Good's Motion to Dismiss.

### III. Conclusion

For the foregoing reasons, AirWatch LLC's Motion to Remand should be granted, and this case should be remanded to the Superior Court of Fulton County, Georgia.

This 21st day of October, 2013.

/s/ Susan A. Cahoon
Susan A. Cahoon
Georgia Bar No. 102000
scahoon@kilpatricktownsend.com
KILPATRICK TOWNSEND &
 STOCKTON LLP
Suite 2800 – 1100 Peachtree Street
Atlanta, GA 30309-4530
Phone: (404) 815-6500

Attorneys for Plaintiff AirWatch LLC

US2008 5010929 1

CERTIFICATION AS TO FONT

In accordance with Local Rule 7.1(D), the undersigned certifies that the foregoing "MEMORANDUM IN SUPPORT OF AIRWATCH LLC'S MOTION TO REMAND" was prepared with Times New Roman 14, a font and point selection approved by the Court in Local Rule 5.1(C).

This 21st day of October, 2013.

/s/ Susan A. Cahoon
Georgia Bar No. 102000

US2008 5010929 1

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing "REPLY IN SUPPORT OF AIRWATCH LLC'S MOTION TO REMAND" with the Clerk of Court using the CM/ECF system, which will automatically send email documentation of such filing to the following attorneys of record:

> Jill Wasserman
> McKool Smith, P.C.
> 1201 West Peachtree Street
> Suite 3219
> Atlanta, Georgia 30309
>
> Robert J. Muller
> Douglas P. Roy
> Cypress LLP
> 11111 Santa Monica Blvd., Ste. 500
> Los Angeles, CA 90025

This 21st day of October, 2013.

/s/ Susan A. Cahoon
Georgia Bar No. 102000