IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AIRWATCH LLC,

                          Plaintiff,

        v.                                                    1:13-cv-2870-WSD

GOOD TECHNOLOGY
CORPORATION and GOOD
TECHNOLOGY SOFTWARE,
INC.,

                          Defendants.

## OPINION AND ORDER

This matter is before the Court on Plaintiff AirWatch LLC's ("Plaintiff" or "AirWatch") Motion to Remand [5]. Also before the Court is Defendants Good Technology Corporation and Good Technology Software, Inc.'s (together, "Defendants" or "Good") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1), or, in the Alternative, to Stay or Transfer Proceedings [4].

## I.    BACKGROUND

This is an action under Georgia law for defamation and disparagement based on Good's allegedly false statements that AirWatch misappropriated Good's intellectual property. Good claims to have patents (the "Patents") for certain of the technology Good contends was misappropriated. On November 14, 2012, Good

filed an action against AirWatch for patent infringement in the United States

District Court for the Northern District of California (the "Patent Infringement

Action"). (Notice of Removal [1] ¶ 1 & Ex. A).[1] On January 7, 2013, AirWatch

filed its answer and counterclaims for a declaratory judgment of noninfringement

and invalidity of the Patents. (Id. ¶ 4 & Ex. B).

On August 2, 2013, AirWatch filed its Complaint [1.4] in this action in the

Superior Court of Fulton County, Georgia. AirWatch asserts claims for

defamation and disparagement under the Georgia Uniform Deceptive Trade

Practices Act, O.C.G.A. § 10-1-372(a)(8). The action is based on the following

allegedly false and misleading statements:

- On November 14, 2012, Good issued a press release directing readers to their websites, http://www1.good.com/patent-litigation, and http://www1.good.com/patent-litigation/airwatch-infringement, on which Good states: "Instead of pursuing independent product development, AirWatch has chosen to use Good's innovative technology and product offerings, in violation of Good's valuable intellectual property rights." (Compl. ¶ 10).

- On November 14, 2012, Good also published on its website a statement that "AirWatch [is] willfully, flagrantly, and improperly using the intellectual property that we have spend hundreds of millions of dollars creating and are simply putting their own name on it. . . . AirWatch must cheat to appear competitive." (Id. ¶ 11).

- In approximately April 2013, Good, through its Vice President and General Counsel, told representatives of *The National Law Journal*

---

[1]     No. 5:12-cv-5827 (N.D. Cal.).

that "[AirWatch] embarked on a very obvious decision to essentially copy, reproduce [Good's] solutions."  (Id. ¶ 12). AirWatch asserts that Good knew *The National Law Journal* would publish the statement, which it did on April 23, 2013. (Id. ¶¶ 12-13).

AirWatch claims that Good's statements are false and misleading, including because AirWatch

> engage[s] in independent and innovative product development and has never knowingly copied any of Good's products, technology, or intellectual property.  [B]efore receiving notice that Good had filed a lawsuit in November 2012 that alleged that AirWatch infringed four patents Good purports to own, AirWatch had never even reviewed those asserted patents.  Further, AirWatch maintains that is [sic] has never infringed and does not infringe a single valid and enforceable claim of those patents and has so pleaded in response to Good's suit.

(Id. ¶ 14).  AirWatch seeks nominal, actual and punitive damages, injunctive relief, attorneys' fees and costs.

On August 28, 2013, Good removed the Fulton County Action to this Court based on 28 U.S.C. § 1338(a), which provides the federal courts with exclusive jurisdiction over "any civil action arising under any Act of Congress relating to patents."[2]

---

[2]     Good also argued in its Notice of Removal that the Court had diversity jurisdiction because Defendants are citizens of Delaware and California, and the members of AirWatch LLC are citizens of Washington, D.C. and Georgia.  (Notice of Removal ¶¶ 8-10).  In its Motion to Remand, AirWatch asserts, and Good does not dispute, that AirWatch's members are citizens of Delaware and California. (Mot. to Remand, Br. in Supp. [5.5] at 5 & Ex. A).  Complete diversity does not

On September 3, 2013, Good moved to dismiss [4] AirWatch's Complaint, arguing that AirWatch was required to assert its defamation and disparagement claims as compulsory counterclaims in the Patent Infringement Action.  Good moved, in the alternative, to stay proceedings in this case pending resolution of the Patent Infringement Action, or to transfer this case to the Northern District of California where the Patent Infringement Action is pending.

On September 17, 2013, AirWatch moved to remand this action to state court [5].  AirWatch contends that the Court lacks subject-matter jurisdiction because AirWatch's state law defamation and disparagement claims do not arise under federal patent law.  The Court first considers AirWatch's Motion to Remand.

## II.    DISCUSSION

### A.    Legal Standard

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  Federal district courts have original subject-matter jurisdiction in "all civil actions arising under the Constitution, laws or treaties of the United States," 28 U.S.C. § 1331, and, more

exist among the parties and the Court therefore does not subject-matter jurisdiction based on diversity of citizenship.  See 28 U.S.C. § 1332.

specifically, "any civil action arising under any Act of Congress relating to patents," 28 U.S.C. § 1338(a).  Jurisdiction under Section 1338(a) "extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action . . . or that a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  MDS (Canada) Inc. v. Rad Source Techs., Inc., 720 F.3d 833, 841 (11th Cir. 2013) (internal quotation marks and citations omitted).

> B.   Analysis

It is undisputed that Plaintiff's Complaint asserts only state-law claims.  The Court therefore has subject-matter jurisdiction over AirWatch's claims only "if a federal [patent] issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  Gunn v. Minton, 133 S.Ct. 1059, 1065 (2013) (citing Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005)).

1.    *Necessarily Raised*

AirWatch asserts claims for defamation and disparagement based on Good's allegedly false statements that AirWatch misappropriated Good's intellectual property and technology.  To state a claim for defamation or disparagement under Georgia law, AirWatch must show that Good's statements were false.  See Mathis v. Cannon, 573 S.E.2d 376, 380 (Ga. 2002) (plaintiff asserting defamation claim under Georgia law must show, among others, a false and defamatory statement concerning plaintiff); O.C.G.A. § 10-1-372(a)(8) (a person engages in a deceptive trade practice when, in the course of his business, he disparages the goods, services, or business of another by false or misleading representation of fact).

AirWatch asserts that its technology was developed independently and without review of the Patents.  It alleges that Good defamed and disparaged it by claiming that AirWatch did not engage in "independent product development" and instead "use[d] Good's innovative technology and product offerings in violation of Good's valuable intellectual property rights."  (Compl. ¶ 10).  Read critically, AirWatch asserts that Good disparaged AirWatch's innovative efforts and industry when it claimed that AirWatch wrongfully copied or duplicated Good's technology and product offerings rather than employing the inventiveness and effort required to offer competitive products.  In doing so, Good specifically accused AirWatch of

cheating.  AirWatch's claims in this case do not center on the Patents themselves.
AirWatch claims it developed its products without regard to Good's technology
and for Good to state otherwise is a sufficient allegation that Good disparaged and
defamed AirWatch.  Good's attempt to elevate the Patents' role in the dispute
misrepresents AirWatch's allegations.

Having carefully read the Complaint, the Court concludes that AirWatch's
claims do not necessarily raise federal patent law issues.  Compare Gunn, 133 S.Ct.
at 1065 (resolution of federal patent question was necessary to plaintiff's legal
malpractice claim against attorney who represented him in patent infringement
case; to succeed on his malpractice claim, plaintiff must show that he would have
prevailed in patent case but for attorney's alleged failure to make a particular
argument); MDS, 720 F.3d at 841-842 (where license agreement prevented
defendant from developing and promoting technology embodying specific patents,
claim for breach of contract necessarily raised a federal issue because plaintiff was
required to prove that device infringed the licensed patents).  The Patents are not
fundamental or even material to the disparagement and defamation claims
AirWatch alleges in its Complaint.

2.     *Substantiality*

Even if AirWatch's claims necessarily raised a federal patent law issue—

which they do not—the claimed patent issue in this case would not be substantial.

"The substantiality inquiry . . . looks to the importance of the [federal patent] issue

to the federal system as a whole."  MDS, 720 F.3d at 842 (internal citation

omitted).  "[I]t is not enough that the federal issue be significant to the particular

parties in the immediate suit; that will *always* be true when the state claim

'necessarily raise[s]' a disputed federal issue . . . ."  Gunn, 133 S.Ct. at 1066

(emphasis and second alteration in original).  The Supreme Court has identified

three factors to consider:

> First, a pure question of law is more likely to be a substantial federal
> question.  Second, a question that will control many other cases is
> more likely to be a substantial federal question.  Third, a question that
> the government has a strong interest in litigating in a federal forum is
> more likely to be a substantial federal question.

MDS, 720 F.3d at 842 (citing Empire Healthchoice Assur., Inc. v. McVeigh,

547 U.S. 677, 700-701 (2006) and Grable, 545 U.S. at 315-316).  The factors are

not present here.

The MDS case is helpful.  In MDS, the Eleventh Circuit found that the

question of patent infringement raised in a breach of contract claim was not

substantial for the purpose of subject-matter jurisdiction under Section 1338.  The

plaintiffs alleged that the defendant breached a provision in their license agreement

which prohibited the defendant from developing and promoting technology that

"embodies, in whole or in part, [certain p]atents." Id. at 841.  The court found that,

although the plaintiffs' breach of contract claim required a determination whether a

device infringed a patent, the patent issue was not substantial because the question

of patent infringement is "heavily fact-bound and situation-specific," and requires

"a fact-specific application of rules that come from both federal and state law

rather than a context-free inquiry into the meaning of a federal law." Id. at 842.

The court in MDS also noted that resolution of the case was unlikely to control any

future cases, including because the relevant parties were joined in the lawsuit and

"the highly specialized nature of patent claims and the niche market for the

[devices at issue] suggest that the resolution of th[e] issue is unlikely to impact any

future constructions of claims." Id.  The court observed that the government

interest in any particular fact-bound question of patent infringement is less

significant than its interest in a question of law that will impact future government

decision-making or conduct on a wide scale. Id.  Because the issue of patent

infringement raised by the plaintiffs' breach of contract claims was not substantial,

the Eleventh Circuit held that the district court did not have jurisdiction in whole or in part based on Section 1338.[3]

MDS is instructive in evaluating whether the Patents would be a substantial issue in this case.  The technology at issue here is confined to the specialized market for "enterprise-grade Mobile Device Management, Mobile Application Management and Mobile Content Management."  The Patents and their claims are specialized and resolution of the claims does not appear likely to control future cases—at least neither party asserts that they will.  Resolution of the claims does not require interpretation of federal law.  To the extent Defendants argue that resolution of infringement issues by a state court could lead to inconsistent results or have a preclusive effect on other litigation, the Supreme Court in Gunn expressly rejected these arguments as insufficient to establish federal "arising under" jurisdiction:

> Congress ensured uniformity by vesting exclusive jurisdiction over actual patent cases in federal district courts . . . . In resolving the nonhypothetical patent questions those cases present, the federal

---

[3]     In MDS, the Eleventh Circuit considered the basis for the district court's jurisdiction in determining whether it had jurisdiction over the appeal because the case involved issues of federal patent law.  At the time of the appeal, 28 U.S.C. § 1295 granted the Federal Circuit exclusive jurisdiction over an appeal from a district court if the district court's jurisdiction was based on Section 1338.  The court concluded that the district court had diversity jurisdiction and supplemental jurisdiction, but not patent jurisdiction under Section 1338, and therefore the Eleventh Circuit—not the Federal Circuit—had jurisdiction over the appeal.

courts are of course not bound by state court case-within-a-case patent rulings. . . . [E]ven assuming that a state court's case-within-a-case adjudication may be preclusive under some circumstances, the result would be limited to the parties and patents that had been before the state court.  Such "fact-bound and situation-specific" effects are not sufficient to establish federal arising under jurisdiction [and] the possibility that a state court will incorrectly resolve a state claim is not, by itself, enough to trigger the federal courts' exclusive patent jurisdiction, even if the potential error finds its roots in a misunderstanding of federal law. . . .

Gunn, 133 S.Ct. 133 at 1067-68.

Good argues that Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 986 F.2d 476 (Fed. Cir. 1993) and Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1329 (Fed. Cir. 1998), overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356 (Fed. Cir. 1999), two cases decided before Gunn, support existence of Section 1338 jurisdiction here.  Good's reliance on these cases is misplaced.  In Additive Controls and Hunter Douglas, the Federal Circuit held that federal subject-matter jurisdiction was proper because the plaintiffs' right to relief necessarily depended on resolution of substantial questions of federal patent law, in that patent law was a necessary element of their state law claims.  In Gunn, the Supreme Court observed that the state court, in finding that the federal issue was substantial, had focused on the importance of the issue to the plaintiff's case.  The Supreme Court rejected this approach, stating: "As our past cases show, however, it is not enough that the federal issue be significant to the

particular parties in the immediate suit . . . ."  <u>Gunn</u>, 133 S.Ct. at 1066.

Application of <u>Gunn</u> is not, as Good myopically suggests, limited to "backward-looking" legal malpractice claims.[4]

       AirWatch's state law defamation and disparagement claims do not necessarily raise issues of patent law, and, even if they did, the issue of patent infringement presented by its claims would not be a "substantial question" of federal law.  The fact-specific nature of the infringement issue, the small likelihood that resolution of it would impact future cases, and the weak interest of the

---

[4]     Good relies on <u>Forrester Environ. Servs., Inc.. v. Wheelabrator Tech., Inc.</u>, 715 F.3d 1329 (Fed. Cir. 2013), to support that "forward-looking claims that involve patent issues, as opposed to those that are 'purely backward-looking' like the malpractice claim in <u>Gunn</u>, present a substantial question of federal law." (Defs' Resp. [9] at 15-16).  Good overemphasizes the Federal Circuit's general comment that <u>Additive Controls</u> and <u>Hunter Douglas</u> "may well have survived the Supreme Court's decision in <u>Gunn</u>," and Good further mischaracterizes the court's observation regarding inconsistent judgments between state and federal courts.  In <u>Forrester</u>, the court found that the plaintiff's state-law claims, based on allegedly false statements regarding patent rights, did not raise a substantial question of federal law including because there was no prospect of a future patent infringement suit—the statements occurred outside of the United States and the patents at issue had expired.  715 F.3d at 1335.  The court also rejected the defendant's argument that the case raised a substantial question of federal patent law because resolution of the patent issues would have a preclusive effect in any future litigation involving the same patents.  The court specifically acknowledged that "the Supreme Court rejected a related argument in <u>Gunn</u>, concluding that any such collateral estoppel effect 'would be limited to the parties and patents that had been before the state court,' and that 'such fact-bound and situation-specific' effects are not sufficient to establish federal arising under jurisdiction."  <u>Id.</u>  The court held that, even if the plaintiff's claims necessarily raised a question of patent law, the patent law issues were not "'substantial in the relevant sense' under <u>Gunn</u>."  <u>Id.</u> at 1336.

government in federal adjudication of these state law claims support that the federal law question in this case is not substantial.  See MDS, 720 F.3d at 843; see also Gunn, 133 S.Ct. at 1067.  The Court lacks subject-matter jurisdiction and this action is required to be remanded to the Superior Court of Fulton County.[5, 6]

## III.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand [5] is **GRANTED**.  This action is **REMANDED** to Superior Court of Fulton County, Georgia.


**SO ORDERED** this 24th day of April, 2014.


William S. Duffey

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[5]    The Court notes also that exercise of federal subject-matter jurisdiction in this action would "upset the congressionally approved balance of federal and state judicial responsibilities," by "sweep[ing] a number of state-law claims into federal court," against the Supreme Court's caution that "state law claims based on underlying patent matters will rarely, if ever, arise under federal patent law for purposes of [Section] 1338(a)."  See MDS, 720 F.3d at 843 (quotations and citations omitted).

[6]    Because the Court lacks subject-matter jurisdiction, the Court does not consider Defendants' Motion to Dismiss.